IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| JANIS LYNN BROWN | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:12CV804 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § | |

**MEMORANDUM OPINION AND ORDER**

On October 25, 2012, Plaintiff initiated this civil action pursuant to the Social Security Act (The Act), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits. Pursuant to 28 U.S.C. § 636(c), the case was assigned to the undersigned for disposition.

**I.    HISTORY**

Born in 1956, Plaintiff was 54 years old at the time of her application and 55 on the date of the ALJ's decision. *See* Transcript ("Tr.") at 43 (Administrative Law Judge ("ALJ") decision). She has a high school diploma, and past relevant work as a licensed vocational nurse . *See* Tr. at 166, 171.

On January 8, 2010, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. *See* Tr. at 33. In her application, she alleged disability beginning July 13, 2008. *Id*. Records show that Brown has been treated for back, shoulder, and mental impairments. In July 2008, Plaintiff injured her right shoulder in a work-related accident. *See* Tr. at 322. She has undergone surgery for her shoulder and further surgery has been recommended. She struggles with pain management of her orthopedic injuries. Further, she has diagnosed mental issues.

Plaintiff's claim was denied initially and on reconsideration. *Id*. Plaintiff sought review of the denial. An administrative hearing was conducted before the ALJ on May 10, 2011. *Id*. at 50 (transcript of administrative hearing). Plaintiff appeared and testified, without counsel. *Id*. A vocational expert, Russell Bowden, appeared and testified. *Id*. Medical expert Dr. Howard McClure, Jr. was not present at the hearing, did not listen to any testimony, but testified at the end of the hearing through a telephone call.

The ALJ issued an unfavorable decision on July 18, 2011. *See* Tr. at 30-49. Therefore, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. *See* Tr. at 43.

At the request of Plaintiff, the Appeals Council (AC) the ALJ's decision in conjunction with the entire record. Plaintiff, now having retained counsel, submitted additional evidence for Appeals Council to review. On September 13, 2012, the AC denied her request. *See* Tr. at 1-5.

Accordingly, the AC denied Plaintiff's application. *See* Tr. at. 1-5. Therefore, the AC's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Plaintiff now seeks judicial review of the decision pursuant to 42 U.S.C. § 405(g). Plaintiff contends that the Commissioner erred by not providing advance notice that the medical expert would testify by telephone, and that the residual functional capacity (RFC) findings in the ALJ's written decision are unsupported by substantial evidence.

## II. STANDARD

Title II of the Act provides for disability insurance for workers who are disabled. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435, n.1 (5th Cir. 1985); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 11055th (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42, U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner]'s, even if the evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 435; *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988); see *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d 357, 360 (5th Cir. 1993); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990); *Anthony*, 954 F.2d 289, 295 (5th Cir. 1992); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance – that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed.Appx. 382, 383 (5th Cir.2003); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed.

3

*Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Court must do more, however, than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook*, 750 F.2d 391, 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42. U.S.C. § 405(g) (2000); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id*.; *see Bowling*, 36 F.3d at 435; *see* also *Harrel*, 862 F.2d at 475). Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must

determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f).

An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id.* To obtain Title II disability benefits, Plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir.1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

Because Plaintiff proceeded *pro se* at the administrative hearing, the ALJ had a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' " *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir.1984); *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir.1978); *see* also *Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir.1981), *cert. denied*, 455 U.S. 912(1982). An administrative law judge's failure to carry out this duty precipitates a decision not informed by sufficient facts, and, consequently, is considered unsupported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 704 (5th Cir.1986); *Kane v. Heckler*, 731 F.2d at 1219; see also *Brock v. Chater* 84 F.3d 726 (5th Cir.1996); *Davis v. Califano*, 599 F.2d 1324 (5th Cir.1979); *McGee v. Weinberger*, 518 F.2d 330 (5th Cir.1975).

### III. ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings in the June 21, 2011, decision:

The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

The claimant has not engaged in substantial gainful activity since July 13, 2008, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*, and 416.971 *et seq.*).

The claimant has the following severe impairments: a history of right shoulder repair of the rotator cuff, a history of chronic obstructive pulmonary disorder (COPD), and a mental impairment under listings 12.04, 12.06, and 12.09 (DAA, Polysubstance Abuse). Hepatis C is considered to be non severe, per the medical expert (20 C.F.R. § 404. 1523[c] and 416.923[c] and *Stone v. Heckler*, 752 F.2d 1099 [5th Cir. 1985]).

The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant can stand/walk for up to six hours a day, but can never climb ladders/ropes and can only occasionally use ramps/stairs or perform postural movements, and can only occasionally reach overhead with the right upper extremity. She can understand and remember simple instructions and complete unskilled tasks, but she requires non public work.

The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565 and 416.965).

The claimant has not been under a disability, as defined in the Social Security Act, from July 13, 2008, through the date of this decision (20 C.F.R. § 404.1520(g) and 416.920(g)).

*See* Tr. at 33-43.

The ALJ determined that Plaintiff was not disabled under sections 216(i), 223(d), and 1614 (a)(3)A) of the Social Security Act. *See* Tr. at 33-43.

## IV. DISCUSSION AND ANALYSIS

### A. The Medical Evidence

The following evidence regarding Plaintiff's medical history is contained within the Court's record.

Records show that Plaintiff has been treated for back, shoulder, and mental impairments. Plaintiff's treating physician, Dr. Howard Nguyen, treated Plaintiff's lumbar pain and recommended pain management as early as October 2007. *See* Tr. at 320, 559. The 2007 records also note that Plaintiff suffered from hypertension, hepatitis C, and anxiety for which she was prescribed Valium. *See*

6

Tr. at 318, 320, 557, 559. Dr. Nguyen treated Plaintiff on a monthly basis throughout 2008. His records consistently note diagnoses of lumbar pain, anxiety, panic attacks, hypertension, and COPD. *See* Tr. at 310-316, 543-56. Dr. Nguyen objectively noted that Plaintiff suffered from back tenderness, weakness, swelling, and reduced range of motion. *See* Tr. at 305, 316.

In July 2008, Plaintiff suffered from a work-related injury to her right shoulder. *See* Tr. at 322. She underwent shoulder surgery on January 22, 2009, for rotator cuff tendinitis and tear of her anterior-superior labrum. See *Id*. At a follow-up appointment on January 26, 2009, Dr. Bryan Danzer noted that Plaintiff could not return to full duty at work, and the time before she could return to full duty at work would be "considerable." *See* Tr. at 337. Dr. Danzer also noted that Plaintiff's treatment was complicated by her chronic pain. See *Id*.

Three months after her surgery, Plaintiff reported continued shoulder pain. Dr. Danzer noted that her range of motion was not where it should be in her recovery. *See* Tr. at 327. Dr. Danzer also performed a subacromial injection in her shoulder in response to her extreme pain focused behavior and the failure of therapy to relieve her pain. *Id*. Dr. Danzer also noted that Plaintiff had reduced the amount of analgesic medications she was taking. *See* Tr. at 328. In April 2009, Plaintiff was treated at Trinity Mother Francis Hospital in Tyler for racing heart, shaking, lightheadedness, and anxiety. *See* Tr. at 342, 344, 351, 353. Plaintiff was diagnosed with anxiety and depression. *Id*.

On May 18, 2009, Plaintiff underwent a clinical interview and mental status exam with psychologist Dr. Brick Lenert. *See* Tr. at 538. Plaintiff related to Dr. Lenert that she had been treated with Paxil and Valium for many years, and that she had problems with anger and self-mutilation. *See* Tr. at 358. She stated that she suffered from anxiety, avoidance, panic attacks, depressed mood, mania, suicidal ideations, and sleep problems. *See* Tr. at 359. Plaintiff told Dr. Lenert that she sometimes cooked and swept, but had no social activities, and that her attention and concentration were impaired. *Id*. Dr. Lenert noticed that Plaintiff's memory and attention were somewhat variable, and he assessed

7

her with a GAF of sixty.[1]  *See* Tr. at 361. The doctor diagnosed a mood disorder and personality disorder and opined that Plaintiff was likely to continue to experience interpersonal and adjustment difficulties in the future. *Id*.

Dr. Danzer wrote a letter to the claims manager in charge of Plaintiff's claim related to her workplace injury. In the letter, dated May 27, 2009, Dr. Drazner noted that Plaintiff had undergone repeated steroid injections for treatment of degenerative disc disease in her lower back. *Id*. Dr. Drazner stated that interpretation of Plaintiff's complaints of pain was difficult due to her pain-focused behavior and chronic pain. *See* Tr. at 323.  Plaintiff's active range of motion had improved post-surgery. *Id*. Dr. Drazner opined that Plaintiff was capable of "light duty" work. *See* Tr. at 324.

On June 1, 2009, a nonexamining state agency psychological consultant issued an opinion regarding Plaintiff's mental limitations. *See* Tr. at 363-65. The consultant opined that Plaintiff could understand, remember, and carry out detailed instructions, get along with coworkers, and adjust appropriately to changes in the workplace. *See* Tr. at 365. The consultant also opined that Plaintiff's ability to interact appropriately with the public was markedly limited. *See* Tr. at 364. In a psychiatric review technique analysis, the consultant opined that Plaintiff's activities of daily living and social functioning were mildly limited by her mental impairments and her concentration, persistence and pace were moderately limited. *See* Tr. at 367-79.

On June 20, 2009, Plaintiff underwent a consultative examination for her physical impairments performed by Dr. Neil Adelman. *See* Tr. at 382. Dr. Adelman noted that Plaintiff's treatment records showed diagnoses of lumbar spine osteopenia, degenerative facet joint hypertrophy, chronic pain, and

---

[1]GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." *Boyd v. Apfel,* 239 F.3d 698, 700 n. 2 (5th Cir.2001); *see* also American Psychiatric Ass'n Diagnostic and Statistical Manual at 32 (4th ed. 1994)). A GAF of sixty indicates moderate symptoms or any moderate difficulties in maintaining social, occupational, or school functioning. American Psychiatric Ass'n Diagnostic and Statistical Manual at 32.

shoulder impairment. *Id*. The doctor also noted that obtaining Plaintiff's history was difficult because of her erratic narration. *Id*. Plaintiff stated that she suffered from headaches, shortness of breath, dizziness, severe mood swings, and pain. *See* Tr. at 383. Upon examination, Plaintiff had difficulty raising her right arm and could not do a full straight leg raise. *Id*. In his summary of his exam, Dr. Adelman reiterated his concern regarding Plaintiff's flight of ideas and noted that she appeared poorly kept. *Id*. A chest x-ray showed emphysematous changes, and a lumbar x-ray showed arthritic changes. *Id*. Dr. Adelman concluded that Plaintiff could sit, stand, and move around, but she could not carry any objects. *See* Tr. at 384.

On June 26, 2009, a nonexamining state agency consultant issued an opinion regarding Plaintiff's physical limitations. *See* Tr. at 386-93. The consultant opined that Plaintiff was limited to lifting and carrying up to twenty-five pounds frequently and fifty pounds occasionally. *Id*. The consultant also noted that Plaintiff was limited to occasional reaching with her right upper extremity. *Id*.

Although Plaintiff received injections directly into her shoulder, along with a prescription for Celebrex, these treatments did not provide long-term relief of Plaintiff's shoulder pain. Plaintiff's surgeon, Dr. Garner Newton, ordered an MRI. *See* Tr. at 399-400. An MRI was performed in July 2009, and it showed that Plaintiff had a bursal surface tear of the supraspinatus and tendinopathy. *See* Tr. at 395-96. Plaintiff still suffered from significant pain, and that, combined with the MRI evidence showing a tear in her shoulder, led Dr. Newton to recommend a revision surgery. *See* Tr. at 397-98.

During her follow-up appointments with Dr. Drazner in July and August 2009, Plaintiff presented with persistent pain, positive impingement signs in her shoulder, and reduced range of motion. *See* Tr. at 529-33. The doctor noted Plaintiff's need for revision surgery, but the surgery had not been approved under Plaintiff's workplace injury claim. *See* Tr. at 529.

On December 31, 2009, Plaintiff was injured in a motor vehicle accident. *See* Tr. at 468-69, 480. She sustained a compression fracture of her T-12 vertebrae. *See* Tr. at 480. Dr. Drazner

subsequently increased Plaintiff's pain medications and she was given lidoderm patches to deal with her increased pain due to the accident. *See* Tr. at 416. He also noted that the injections he gave Plaintiff for her should pain had not provided long-term relief and that revision surgery had been recommended but not performed. *See* Tr. at 525-26.

On March 17, 2010, Plaintiff underwent a psychological consultative exam performed by Dr. Suzanne Chapman Reams. *See* Tr. at 562. Plaintiff reported that she had no friends and difficulty completing tasks. *See* Tr. at 563. Plaintiff stated that she dealt with stress with angry outbursts and picking at her skin. *See Id.* She also had suicidal thoughts. *See* Tr. at 564. After performing a mental status examination, Dr. Reams opined that Plaintiff suffered from bipolar disorder and her GAF was forty-two.[2] *See* Tr. at 565. Dr. Reams's prognosis was guarded, and she felt that Plaintiff would not be able to manage any benefits awarded to her. *See* Tr. at 566.

A mental residual functional capacity opinion was issued by a nonexamining state agency consultant on April 22, 2010. *See* Tr. at 567. The consultant opined that Plaintiff could follow simple instructions and make simple decisions and interact appropriately with coworkers and supervisors. *See* Tr. at 569. A psychiatric review technique opinion was issued on the same day, and it stated that Plaintiff's activities of daily living, social functioning, and concentrations, persistence and pace were moderately limited by her mental impairments. *See* Tr. at 581.

At an appointment on April 23, 2010, Dr. Drazner noted that Plaintiff had not been compliant with her home exercise program and was taking Norco every six hours for continued pain. *See* Tr. at 413-14. Plaintiff also reported significant problems with anxiety. *See* Tr. at 414. Plaintiff was also treated at Total Healthcare Center in April 2010 for back pain, anxiety, and depression. *See* Tr. at 600.

---

[2]A GAF of forty-two indicates serious symptoms and serious impairment in social, occupational, or school functioning, *e.g.*, no friends, unable to keep a job. American Psychiatric Ass'n Diagnostic and Statistical Manual at 32.

In May 2010, Plaintiff's chronic problems were listed as hypertension, anxiety, and panic attacks. *See* Tr. at 593. She was also referred to pain management. *See* Tr. at 598.

In a statement dated June 8, 2010, Dr. Drazner stated that Plaintiff was still under his care and yet to be returned to work. *See* Tr. at 660.

In July 2010, a state agency medical consultant issued another nonexamining opinion regarding Plaintiff's physical limitations. See Tr. at 625-27. The consultant limited Plaintiff to lifting and carrying twenty pounds occasionally and ten pounds frequently. *Id*. The consultant also stated that Plaintiff could not climb ladders, ropes, or scaffolds, and her overhead reaching was limited to occasional with her right upper extremity. *Id*.

In August 2010, Dr. Drazner noted that Plaintiff was still restricted to "light duty" and no overhead reaching. *See* Tr. at 653. The doctor noted that Plaintiff still took a pain medication, norco, four times daily. *See* Tr. at 637. The doctor again stated that Plaintiff's treatment was complicated by her chronic pain behavior and history of narcotic seeking behavior. *See* Tr. at 636.

Plaintiff sought treatment for shoulder and back pain, anxiety, depression, and sleep problems in September 2010 from Total Healthcare Center. *See* Tr. at 692. She was diagnosed with chronic pain syndrome, anxiety with chronic use of anti-anxiety medication, and hypertension. *Id*. At a follow-up in early 2011, Plaintiff was noted to suffer from bipolar disorder, hepatitis C, thrombocytopenia, and chronic back pain. *See* Tr. at 689. Plaintiff was also undergoing withdrawal from opiate dependence. *See* Tr. at 691.

In March 2011, Plaintiff was treated at East Texas Medical Center for sycope, confusion, and weakness resulting from withdrawal from opiates and a sleep disorder. *See* Tr. at 663-66. A lumbar MRI showed a chronic compression fracture at the T-12 vertebrae and disc dessication and protrusions at multiple levels of Plaintiff's spine. *See* Tr. at 678.

### B. The Use of Telephonic Testimony

Plaintiff contends that the ALJ's opinion should be reversed and remanded because the ALJ allowed the medical expert, Dr. McClure, to testify at the hearing by telephone without prior notice to the Plaintiff of this means of appearance. *See* Plaintiff's Brief at 10-13. Plaintiff further contends that she was harmed by this error.

Social Security regulations provide that "the administrative law judge determines whether [the] appearance ... of any other individual who is to appear at the hearing will be made in person or by video teleconferencing" and set forth the requirements for when video teleconferencing testimony is admissible. 20 C.F.R. § 404.936(c). Regulations also provide that the claimant will "be told if [the] appearance ... of any other party or witness is scheduled to be made by video teleconferencing rather than in person." 20 C.F.R. § 404.938(b). The notice of hearing must indicate "that the scheduled place for the hearing is a teleconferencing site and explain what it means to appear at [the] hearing by video teleconferencing." *Id.* The notice must further provide plaintiff with directions on how to object and request an in-person hearing. *See* id. The Commissioner concedes that regulations make reference only to testifying in person or by video teleconferencing. *See* Comm'r Brief at 6, citing 20 C.F.R. §§ 404.936(c), 404.950(a).

Plaintiff contends that Commissioner committed legal error by not providing her with notice that the medical expert would be testifying by telephone. Although there is no regulation that specifically requires such notice, there is no regulation that discusses, allows, or disallows telephonic testimony. Plaintiff contends that such a requirement may be extrapolated from the regulation requiring notice that a witness will not be appearing in person. *See* 20 C.F.R. § 404.938(b) (The claimant will "be told if [the] appearance ... of any other party or witness is scheduled to be made by video teleconferencing rather than in person."); *cf. Rice v. Astrue,* No. 5:09CV00093 JTR, 2010 WL 3417803, at *7 n. 7 (E.D.Ark. Aug. 26, 2010) ( claimant had actual notice that the ALJ would take medical expert

testimony by telephone, which undermined claimant's argument that he was not given regulation-required notice).

Plaintiff also contends that the ALJ erred by taking, and in turn, relying on telephonic testimony from the medical expert. "The few courts that have addressed this issue have usually found the inclusion of such telephonic evidence to be legal error." *Edwards v. Astrue*, 3:10CV1017 MRK, 2011 WL 3490024, at *8 (D. Conn. Aug. 10, 2011); *Ainsworth v. Astrue,* No. 09–cv–286–SM, 2010 WL 2521432 (D.N.H. June 17, 2010); *Porter v. Barnhart,* No. C05–5166FDB, slip op. (W.D.Wash. Mar. 3, 2006) (recommended ruling) (*Porter I* ); *Porter v. Barnhart,* No. C05–5166FDB, slip op. (W.D.Wash. Apr. 11, 2006) (*Porter II* ); accord *Hepp v. Astrue,* 511 F.3d 798 (8th Cir. 2008) (claimant's due process rights were not violated by the admission of a medical expert's telephonic testimony, though expressing concerns the a telephonic cross-examination would "violate agency regulations"); *but see Goodwin v. Astrue,* No. 10–No. 10–cv–233–PB, 2011 WL 1630927, at *11 (D.N.H. Apr. 11, 2011) (claimant's objection to the use of telephonic medical expert testimony would not succeed). The regulation only mentions witness appearance and testimony by personal appearances and video-conferences. Plaintiff further argues that the regulation's specificity in allowing video-conferences supports the finding that telephone conferences are not an acceptable media to facilitate an appearance by a witness at an administrative hearing.

The Commissioner contends that nothing in the regulations prohibits telephone testimony. *See* Comm'r Brief at 6-7. The Commissioner further argues that the Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX) permits ALJs to obtain expert medical or vocational testimony through in person testimony, video teleconference, or telephone at a hearing. *See* Comm'r Brief at 7. HALLEX is an internal policy manual for ALJs and the Appeals Council, and as such, does not have the force of law and is not binding upon the courts. *Cf. Schweiker v. Hansen*, 450 U.S. 785, 789-90 (1981); *Jones v. Dept. of HHS*, 843 F.2d 851, 853 (5th Cir. 1988). HALLEX does not "carry the force of law." *Parra v. Astrue*, 481 F.3d 742, 749 (9th Cir.2007).

### C. Application of Law to the Present Case

Plaintiff contends that Commissioner committed legal error by not providing her with notice that the medical expert would be testifying by telephone. *See* Pl. Br. at 10–11. Plaintiff also contends that she was harmed by the lack of notice that the medical expert would be testifying by telephone because had she known about this form of testimony earlier, she could have objected, and the medical expert might have appeared in person or at least by video teleconference. *See* Pl. Br. at 12–13. Plaintiff contends that, had the medical expert appeared in person or by videoconference, a reasonable possibility existed that the outcome in her case could have different. *Id*.

Regarding the notice requirement, Social Security regulations provide that the claimant will "be told if [the] appearance ... of any other party or witness is scheduled to be made by video teleconferencing rather than in person." 20 C.F.R. § 404.938(b). The notice of hearing must indicate "that the scheduled place for the hearing is a teleconferencing site and explain what it means to appear at [the] hearing by video teleconferencing." *Id.* The notice must further provide plaintiff with directions on how to object and request an in-person hearing. *See id.*

In this case, there was no notice provided to the *pro se* Plaintiff that Dr. McClure, the medical expert, would not be testifying in person. Under 20 C.F.R. § 404.938(b), Plaintiff was entitled to notice if a witness's appearance was "scheduled to be made by teleconferencing rather than in person.." Setting aside the issue of whether telephonic appearances are even permitted under the regulations, Section 404.938(b) suggests, at the very least, that Plaintiff should have received notice that Dr. McClure would appear by telephone. No such notice appears in the record. The failure to provide notice for Dr. McClure's telephonic testimony violated Section 404.938(b).See *Edwards v. Astrue*, No. 3:10cv1017(MRK), 2011 WL 3490024 at *8 (D.Conn. Aug. 10, 2011) (analogizing the notice

requirements of § 404.938(b) to telephonic testimony). This Court find that the failure to provide notice is error.

The harmless error doctrine, however, applies in Social Security disability cases. The Commissioner's errors in failing to give notice to a *pro se* plaintiff regarding the telephonic appearance of the medical expert and relying on telephonic testimony does not require remand unless Plaintiff can demonstrate prejudice. *See Morris v. Bowen,* 864 F.2d 333, 335 (5th Cir. 1998). "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Id*; *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988).

To show prejudice, the claimant need only raise a "reasonable possibility" that the additional evidence or the evaluation of the evidence in light of the correct legal standard would have changed the outcome of the Commissioner's decision. *See Ripley*, 67 F.3d at 555; *see also Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994). The Commissioner responds that Plaintiff has not shown that she was prejudiced by the lack of notice regarding the telephonic testimony or by the ALJ's reliance on that testimony. *See* Comm'r Br. at 6–8. Specifically, Commissioner contends that "Plaintiff, who appeared *pro se* at the hearing, had not shown what benefit she would have had if Dr. McClure had been able to observe her during the hearing, or how she would have benefitted from cross-examining Dr. McClure face-to-face." *See* Comm'r. Br. at 6.

The Court finds, however, Brown has made such a showing and has adequately demonstrated prejudice. "A claimant may demonstrate prejudice by showing that, but for the error, the ALJ *might* have reached a different conclusion." *Parker v. Barnhart*, 431 F. Supp. 2d 665, 672 (E.D. Tex. 2006) (emphasis added), see also *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir.2000) (prejudice established

by showing that supplementation of record might have led to a different outcome); *see also Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir.1 F.2d 1216, 1220 (5th Cir.1984).

Had the Plaintiff known before the hearing that the expert would not be appearing in person, she could have objected before the hearing. An objection before the hearing could have easily resulted in the medical expert appearing in person or by video teleconference. It is certainly possible that Plaintiff's cross-examination may have been more effective or that the ALJ may have found the medical expert's testimony to be less persuasive had the expert testified in person or via videoconference. *See* Tr. at 65-68 (Brown's cross-examination of the expert).

Because of the timing of the telephone call, Dr. McClure did not hear Plaintiff's testimony regarding her symptoms and limitations. At the hearing, Plaintiff described the nature and location of her pain, as well as the functional limitations she suffered. *See* Tr. at 56–64. Plaintiff also explained that the references to drug-seeking behavior in her records occurred as part of a confusion regarding which doctor would be supervising her pain medication. *See Id.*

Dr. McClure was not called on the telephone until after Plaintiff testified. *See* Tr. at 64. Had Dr. McClure been present for Plaintiff's testimony regarding her impairments and symptoms, it could have affected his opinions regarding the severity of Plaintiff's impairments and limitations. Dr. McClure described Plaintiff as a "drug user" in his telephonic testimony. *See* Tr. at 64. The ALJ later referred to Plaintiff's "narcotic seeking behavior" in his written opinion as a reason he did not find her pain complaints to be completely credible. *See* Tr. at 40.

The ALJ relied heavily on the testimony of the medical expert when finding that Plaintiff was capable of a restricted range of medium work. *See* Tr. at 39( "The undersigned accepts the medical expert and State Agency evaluations, which found she could perform medium exertion with some

restrictions.") Had the medical expert appeared in person or by videoconference, a reasonable possibility existed that the outcome in her case could have different. If the ALJ had found Plaintiff's statements concerning her symptoms' intensity, persistence, and limiting effects to have credibility, then it is likely that Plaintiff's RFC would probably be reduced. The reduced RFC would have possibly eroded the occupational base upon which the VE premised his responses, on which the ALJ also relied.

Because the ALJ's relied on the telephonic testimony of a medical expert —who did not listen to the Plaintiff testify---without providing the *pro se* Plaintiff prior notice, it cannot be said that the ALJ's decision is supported by substantial evidence. Therefore, the Court must reverse the decision of the ALJ denying benefits. *See Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000). This error requires a remand; as a result, the remainder of the Plaintiff's claims need not be addressed.

## V.  RECOMMENDATION

In light of the foregoing, it is accordingly **ORDERED** that the decision of the Commissioner is hereby **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) with instructions for further consideration consistent with the findings above.

So ORDERED and SIGNED this 24th day of March, 2014.

*K. Nicole Mitchell*
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE